UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAREN EARL RIDLEY,

Plaintiff,

v.                                                          CAUSE NO. 3:24-CV-460-GSL-AZ

RON NEAL, et al.,

Defendants.

<u>OPINION AND ORDER</u>

Daren Earl Ridley, a prisoner without a lawyer, was ordered to show cause why the initial partial filing fee was not paid. (ECF 9.) He responded to the order (ECF 12), and the docket reflects that the initial partial filing fee has now been paid. (ECF 13.) The case can proceed to screening.

Under 28 U.S.C. § 1915A, the court must screen the amended complaint (ECF 6) and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To survive dismissal, a complaint must contain sufficient factual matter to state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Ridley is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Ridley is a prisoner at Indiana State Prison ("ISP"). The events underlying the complaint began in March 2022, when he was transferred from Wabash Valley Correctional Facility to ISP and placed in segregation. He claims the conditions in his cell in the segregation unit, D-422, were deplorable; among other things his mattress was infested with bed bugs, mice ran freely, there was feces around the toilet, and the cell smelled of raw sewage. He claims to have complained to numerous prison employees, but the conditions were not addressed until April 7, 2022, when he moved to another cell in the segregation unit, D-209.

He further claims that during this period, he sought numerous times and through various channels to learn the reasons for his continued detention in segregation, including filing classification appeals, grievances, and requests for interviews with the Warden, Deputy Warden, and others. He was told in early August 2022 that he had been approved for release from segregation and was on a waiting list for bed space in general population. He was not released from segregation until mid-November 2022. He claims his Due Process rights were violated because he was not given a meaningful review of his placement during his time in segregation and because he had to serve an additional three months in segregation after prison officials determined he could be released to general population. He further claims that he was a participant in the prison's "Grief and Loss Program,"[1] and that other participants in the

---

[1] He does not explain what this program is, but according to the IDOC website it is a "course intended for participants who have experienced a painful loss and need assistance in processing their grief." *See* https://www.in.gov/idoc/offender-information/programs (last visited Nov. 21, 2024).

program who were in segregation were treated more favorably. According to Ridley, these other prisoners returned to general population right away, without having to wait for available bed space like he did. Based on these events, he sues nine Indiana Department of Correction ("IDOC") employees for money damages and other relief.

As a preliminary matter, suits filed under 42 U.S.C. § 1983 borrow the statute of limitations for state personal injury claims, which in Indiana is two years. *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Ridley tendered his original complaint to prison officials for mailing on May 23, 2024.[2] (ECF 1 at 27.) Events occurring more than two years prior to this date—including his transfer to ISP in April 2022 and the conditions he allegedly endured in cell D-422 between March 15, 2022, and April 7, 2022—fall outside the two-year statute of limitations period. Untimeliness is an affirmative defense, but dismissal at the pleading stage is permissible when it is clear from the face of the complaint that the claims are untimely. *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009). That standard is satisfied here. Claims pertaining to events that occurred prior to May 2022 must be dismissed.

Nevertheless, Ridley asserts that his rights continued to be violated until the time of his release from segregation in November 2022. A claim arising from events that occurred between May 2022 and November 2022 would be timely. *Richards*, 696 F.3d at

---

[2] His original complaint was stricken because it was not signed and contained other deficiencies. (ECF 1, 2.) The court will presume for purposes of this opinion that the amended complaint filed in July 2024 "relates back" to the original, as they contained the same type of claims. *See* Fed. R. Civ. P. 15(c).

637. He first claims his Eighth Amendment right to adequate housing was violated due to the conditions in the segregation unit.

In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the deprivation is serious enough that it amounts to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate shelter, bedding, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834; *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). This standard is satisfied "when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

It can be discerned that the cell where Ridley was housed from May 2022 to November 2022—cell D-209—was not as bad as cell D-422, but he claims it was still infested with mice, fleas, cockroaches, and gnats. He claims it was so extensive they crawled on his belongings and his body, and that the fleas and gnats bit him. Giving him the benefit of the inferences to which he is entitled at this stage, he satisfies the objective prong. *Smith v. Dart*, 803 F.3d 304, 312-13 (7th Cir. 2015) (prolonged exposure

4

to insects can amount to an Eighth Amendment violation); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (inmate's allegation that prison was infested with pests over a period of months stated an Eighth Amendment claim). He further claims that he brought these conditions to the attention of Lieutenant Lott (first name unknown), Sergeant Bass (first name unknown), and Caseworker B. Leonard but they allegedly ignored him and took no steps to remedy the conditions. He has alleged enough to proceed further against these defendants under the Eighth Amendment. *See Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

He next asserts Due Process violations in connection with his detention in long-term segregation. Under the Fourteenth Amendment, due process protections are only required when a liberty interest is at stake. *Sandin v. Conner*, 515 U.S. 472, 484-85 (1995). To trigger a liberty interest, an inmate must be subjected to a "significant and atypical hardship" in relation to the ordinary incidents of prison life. *Id.* at 476. When an inmate is transferred to segregation, "his liberty is affected only if the more restrictive conditions are particularly harsh compared to ordinary prison life or if he remains subject to those conditions for a significantly long time." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013); *see also White v. Scott*, 849 F. App'x 606, 608 (7th Cir. 2021) (inmates have a protected liberty interest in avoiding transfers within the prison that "substantially worsen the conditions of confinement"). There is no firm rule as to the amount of time that must be spent in segregation to trigger a liberty interest, and

instead courts must "look to both the duration of the segregation and the conditions endured." *Lisle v. Welborn*, 933 F.3d 705, 721 (7th Cir. 2019); *see also Kervin v. Barnes*, 787 F.3d 833, 836 (7th Cir. 2015) (term of segregation "considerably shorter" than six months can trigger a liberty interest "depending on the conditions of confinement").

Ridley served a total of eight months in the segregation unit, and he describes conditions there that were extreme. Initially he was housed in a cell surrounded by other inmates' feces and infested with mice and insects. Although he was moved, he was still exposed to pests that bit him and caused him "severe anxiety and endless nights of sleep loss." He was in this cell constantly other than brief periods when he left to shower or exercise. Giving him the inferences to which he is entitled, he has plausibly alleged that the conditions in the segregation unit "deviated substantially from ordinary conditions of his confinement" and that these conditions personally caused him a significant hardship. *Lisle*, 933 F.3d at 721.

When a liberty interest is at stake in this context, inmates are entitled to "some informal, nonadverserial" procedures. *Westefer v. Neal*, 682 F.3d 679, 684-85 (7th Cir. 2012). Informal due process requires "some notice" of the reason for the inmate's placement in long-term segregation and an opportunity to present his views. *Id.* The inmate is also entitled to periodic reviews of his placement. *Id.* The frequency of such review is "committed to the administrative discretion of prison officials." *Id.* at 685. Review procedures "need only be sufficiently frequent that administrative segregation does not become a pretext for indefinite confinement." *Id.* at 686 (citation omitted). In

short, "the requirements of informal due process leave substantial discretion and flexibility in the hands of the prison administrators." *Id.* at 685.

Although the requirements of Due Process are flexible in this context, Ridley plausibly alleges that he received no periodic reviews of his placement and no opportunity to present his views. At some point he received paperwork in which Caseworker Leonard claimed to have conducted a review with him, but he alleges this was false and that she never conducted "any type" of review. To the extent he is claiming prison staff did not comply with internal policies in conducting his reviews, this does not state a cognizable claim under 42 U.S.C. § 1983. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"). However, giving him the inferences to which he is entitled, he plausibly alleges that he was denied even the minimal measures required by the Due Process Clause by Caseworker Leonard, Unit Team ("UTM") Manager Bane (first name unknown), ISP Executive Assistant Mark Newkirk, UTM Goodwin (first name unknown), Supervisor of Classification Derek Christian, Deputy Warden Dawn Buss, and Warden Ron Neal, all of whom received his communications but ignored his concerns. He will be permitted to proceed further on a claim for damages against these defendants under the Fourteenth Amendment.[3]

---

[3] The usual remedy for a due process violation is nominal damages. *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003); *Saxner v. Benson*, 727 F.2d 669, 672 (7th Cir. 1984). It is also possible to obtain an award of punitive damages if the plaintiff can prove the defendants' conduct was egregious. *Calhoun*, 319 F.3d at 942.

He also asserts that his Equal Protection rights were violated because he was treated more harshly than other members of the Grief and Loss Program. To assert an Equal Protection claim, a plaintiff must allege that a state actor purposely discriminated against him on a prohibited basis, such as his race or sex. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Williams v. Dart*, 967 F.3d 625, 637 (7th Cir. 2020). If the disparate treatment is not based on a prohibited ground, it is permissible as long as it is not irrational. *Stevens v. Illinois Dept. of Transp.* 210 F.3d 732, 737-738 (7th Cir. 2000). In the prison context, "prison administrators may treat inmates differently as long as the unequal treatment is rationally related to a legitimate penological interest." *Flynn v. Thatcher*, 819 F.3d 990, 991 (7th Cir. 2016).

Likewise, a plaintiff can state a "class-of-one" Equal Protection claim by alleging that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Word v. City of Chicago*, 946 F.3d 391, 395–96 (7th Cir. 2020). However, "even at the pleading stage, a plaintiff must anticipate the burden of eliminating any reasonably conceivable state of facts that could provide a rational basis for the government's actions," and must "provide a sufficiently plausible basis to overcome the applicable presumption of rationality." *Walker v. Samuels*, 543 F. App'x 610, 611 (7th Cir. 2013). Additionally, class-of-one claims cannot be used to challenge discretionary decisions that are "based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 603 (2008).

Here, Ridley claims he was treated more harshly than similarly situated inmates in the Grief and Loss program. He claims these other inmates were released as soon as their term of segregation ended, whereas Warden Neal and UTM Bane made him stay in segregation an additional three months after he was approved for release. Although he was told by these defendants he was waiting on available bed space, he claims this was a "sham" and that there was plenty of available bed space in general population during this period. Based on his allegations, it cannot be determined at this stage whether there was a rational reason for treating him differently, or whether the decision to keep him in segregation longer was based on an individualized assessment protected by *Engquist*. Further factual development may show that is the case, but he has alleged enough to proceed further on an Equal Protection claim.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Lieutenant Lott (first name unknown), Sergeant Bass (first name unknown), and Caseworker B. Leonard in their personal capacity for money damages for housing him in a cell infested with mice and insects between May 2022 and November 2022 in violation of the Eighth Amendment.

(2) GRANTS the plaintiff leave to proceed against Caseworker B. Leonard, Unit Team Manager Bane (first name unknown), ISP Executive Assistant Mark Newkirk, Unit Team Manager Goodwin (first name unknown), Director of Classification Derek Christian, Deputy Warden Dawn Buss, and Warden Ron Neal in their personal capacity for money damages for denying him Due Process protections in connection with his detention in long-term segregation between May 2022 and November 2022.

(3) GRANTS the plaintiff leave to proceed against Warden Ron Neal and Unit Team Manager Bane (first name unknown) in their personal capacity for money damages for keeping him in segregation longer than similarly situated inmates for no rational basis in violation of the Equal Protection Clause.

(4) DISMISSES all other claims.

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Lieutenant Lott (first name unknown), Sergeant Bass (first name unknown), and Caseworker B. Leonard, Unit Team Manager Bane (first name unknown), ISP Executive Assistant Mark Newkirk, Unit Team Manager Goodwin (first name unknown), Director of Classification Derek Christian, Deputy Warden Dawn Buss, and Warden Ron Neal and to send them a copy of this order and the amended complaint (ECF 6) pursuant to 28 U.S.C. § 1915(d).

(6) ORDERS the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(7) ORDERS Lieutenant Lott (first name unknown), Sergeant Bass (first name unknown), and Caseworker B. Leonard, Unit Team Manager Bane (first name unknown), ISP Executive Assistant Mark Newkirk, Unit Team Manager Goodwin (first name unknown), Director of Classification Derek Christian, Deputy Warden Dawn Buss, and Warden Ron Neal to respond, as provided in the Federal Rules of Civil

Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 22, 2024

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT